**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teresa Watkins,<br><br>Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner, Social Security Administration<br><br>Defendant. | No. CV-12-08046-PCT-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff Teresa Watkins's appeal of the Social Security Administration's (the "Administration") decision to deny benefits. (Doc. 1). For the reasons set forth below, the Administration's decision is affirmed.

## BACKGROUND

### I.   Procedural Background

Plaintiff applied for disability benefits on October 24, 2008, alleging disability from June 2, 2005 based on fibromyalgia, diabetes mellitus with mild left extremity peripheral neuropathy,[1] obesity, carpal tunnel syndrome, and headaches. (Administrative Record "R." 114-17). After her claim was denied initially and upon reconsideration, a hearing was held before Administrative Law Judge ("ALJ") Teresa L. Hoskins Hart on March 31, 2011. (R. 62-96). On June 22, 2011, the ALJ concluded Plaintiff was not

---

[1]   Neuropathy is any disorder affecting any segment of the nervous system. Stedman's Medical Dictionary, at 1211 (27th ed. 2000).

disabled (R. 43-56), and the Appeals Council denied her request for review (R. 1-6), which was a final decision. The matter is now fully briefed. (Docs. 12, 18, 19).

## II.  Factual Background

Plaintiff was 42 years old on her alleged onset date. (R. 114). She has a Bachelor's degree and past relevant work as an office assistant manager, secretary, accounting manager, case aid and bookkeeper. (R. 85, 152, 159). Plaintiff last worked on July 20, 2006. (R. 267).

At her hearing on March 11, 2011, Plaintiff testified that her pain on an average day was moderately severe. (R. 78). On a typical day she woke at 8:00 or 9:00 a.m., took her medicine and fed her three dogs and two cats. (R. 73-74). She drove an automobile, shopped for groceries, cared for her fifteen year old son who went to school online, read novels and watched television. (R. 74-75). Plaintiff testified that she had carpal tunnel in both hands, that wearing hand braces caused her pain and, as a result, she did not have full control of her fingers and had difficulty using the computer, typing and writing. During the day, she laid down two or three times to help with the pain and became drowsy because of her medications. (R. 79). She stated that she could stand and walk for ten minutes without pain and lift a gallon of milk. (R. 81). She had daily body aches due to fibromyalgia and moderate to moderately severe headaches. (R. 81-82). Plaintiff felt she could not work because of the pain associated with her back, neck, fibromyalgia, diabetes, carpal tunnel syndrome and nerve damage. (R. 76-77, 81-83).

Mark Kelman, the Vocational Expert ("VE"), also testified at the hearing. (R. 83-95). The ALJ asked the VE to consider four hypothetical workers assuming the same age, education, prior work experience and vocational profile as Plaintiff. (R. 86-93). The ALJ's first two hypotheticals involved a person who had the capacity for light and medium work but could not stand or walk for more than four hours in an eight-hour workday, was limited to occasional fingering and had some environmental limitations. The VE testified that Plaintiff's past work required more than occasional fingering and

that light and medium work typically required standing for more than four hours each day; thus Plaintiff would be precluded from all light to medium work. (R. 86-89).

In the ALJ's third hypothetical, the worker had the same limitations except she was capable of sedentary work. The VE stated that person could work as an unarmed security guard and telemarketing representative. (R. 89-90). In the fourth hypothetical, the ALJ applied the above limitations to the functional capacity assessed by the physical therapist at Dr. Tadlock's direction, in which the therapist recommended Plaintiff needed an additional thirty minute continuous break. (R. 92). The VE opined no employer would tolerate that type of break and thus work would be precluded. (R. 93).

Plaintiff's counsel added to the ALJ's third hypothetical the need for Plaintiff to keep her legs elevated at heart level while seated due to neuropathic problems and circulation. The VE stated the leg elevation requirement would eliminate the above positions. (R. 93).

Plaintiff's counsel presented two more hypothetical questions to the VE. Plaintiff's first hypothetical added moderately severe pain causing restrictions in persistence, pace, concentration for one-third of the day. The VE testified all employment would be eliminated. (R. 93-94). Plaintiff's counsel then asked whether a person who could occasionally sit, stand and walk, occasionally lift ten pounds, with no usage of the upper extremities for fine control, assembly or grasping, was capable of work. The VE stated that person could not be employed. (R. 94).

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[2] At step one, the ALJ determined that

---

[2] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the

Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 45). At step two, the ALJ determined that Plaintiff suffered from the severe impairments of fibromyalgia, diabetes mellitus with mild left extremity peripheral neuropathy, obesity, carpal tunnel with 2006 right release with residual mild tingling and intermittent numbness, and headaches. (Id.). At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Administration's listed impairments. (R. at 50). The ALJ made a determination of Plaintiff's RFC,[3] concluding that Plaintiff could perform sedentary work, except that Plaintiff was limited to occasional fingering and had to avoid concentrated exposure to vibrations or hazards, such as unprotected heights or dangerous machinery. (R. at 50-51). The ALJ then determined at step four that Plaintiff did not retain the RFC to perform her past relevant work as an office manager or secretary. (R. at 54). The ALJ therefore reached step five, where she determined that Plaintiff could perform two jobs in the national economy, unarmed security guard and telemarketing representative, that met her RFC limitations. Given this analysis, the ALJ concluded that Plaintiff was not disabled. (R. 54-56).

---

regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity ("RFC"), age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

[3] An RFC documents what work-related task a claimant can perform despite the limitations caused by her impairments. *See* S.S.R. 96-8p (July 2, 1996).

**DISCUSSION**

**I.   Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

**II.   Analysis**

Plaintiff argues the ALJ erred by either misinterpreting or disregarding evidence, by rejecting treating physician opinion, by failing to properly consider a Social Security Ruling, and by improperly rejecting Plaintiff's credibility. (Doc. 12 at 2).

**1.   Misinterpreting or ignoring evidence**

Plaintiff asserts that the ALJ, in evaluating Plaintiff's RFC either misinterpreted or ignored evidence of Plaintiff's need to frequently elevate her legs. According to the testimony of the vocational rehabilitation expert, if Plaintiff needs to elevate her legs as a condition of employment, that requirement would eliminate all possible employment for her. (Doc. 12 at 5; R. 233). Without explaining why, Plaintiff asserts that the recommendation that she frequently raise her legs relates somehow to Plaintiff's neuropathy. (Doc. 19 at 1). The record, and discussion of the ALJ demonstrates otherwise.

The ALJ fully discusses in her decision the reasons for her determination that the Plaintiff does not have a permanent requirement to elevate her legs. In the decision the ALJ tracks the development, treatment history and resolution of the claimant's swelling in the lower extremities that resulted in the temporary need for her to elevate her legs. As the decision notes, in October 2009 "the claimant exhibited pitting edema of the lower

extremities." In a follow-up visit that occurred in November 2009, Plaintiff reported that her feet continued to swell, but "it was considered improved from the last visit." The ALJ did note that as a result 'she was recommended to elevate her legs frequently," but also noted that a contemporaneous lower extremity Doppler was negative of evidence "of right or left leg deep venous thrombosis." It was suggested to Plaintiff that she use a Jobst stocking.

When in January 2010 Plaintiff again sought treatment for her lower limb edema, she was "diagnosed with chronic kidney disease and acute renal failure secondary to the use of a diuretic and an ace inhibitor." Her doctor noted that "there was no need for dialysis and that her lower limb edema would improve once she stopped the Celebrex." As the ALJ notes in her decision, treatment notes for the claimant's June 2010 care note that Plaintiff's acute renal failure resolved. (R. 49). Not surprisingly, those notes further indicate that her edema had improved since her last visit. Thus, the ALJ reasoned Plaintiff's renal insufficiency did not meet the twelve-month durational requirement to qualify as a severe and chronic impairment. Claimant, thus, apparently ceased to take the Celebrex which according to her treatment note would result in the alleviation of the swelling in her lower extremities. Thus the ALJ gave a full explanation of why she did not consider the advice given to Claimant in November 2009 to frequently elevate her legs, to be a permanent treatment requirement. (R. 49, 233).

Plaintiff's argument regarding her need for leg elevation is without merit. Plaintiff points to no objective medical evidence that links Plaintiff's neuropathy to Plaintiff's need to elevate her legs. The ALJ explained that Plaintiff's EMG and NCV tests and MRI consistently suggested mild symptomatology. (R. 52, 265, 421, 750). The ALJ noted that the EMG results identified some peripheral neuropathy with sensory loss and explained how that was most likely due to diabetes, which was better managed. (R. 52). Reports from Dr. Tadlock indeed indicate Plaintiff's diabetes was under control from February 2010 through November 2010. (R. 803, 764, 768, 792, 797, 799, 801,

757). There also was no objective medical evidence that Plaintiff was referred for surgery regarding her neuropathy. (R. 52, 750).

### 2. Rejecting opinions of treating physician, Dr. Tadlock, and a physical therapist

Plaintiff next argues the ALJ erred by rejecting treating physician Dr. Tadlock's opinion in April 2007 that Plaintiff could not work. (Doc. 12 at 6; R. 448). Plaintiff also contends the ALJ mischaracterized the opinion of Ms. Deering, a physical therapist who Plaintiff asserts became part of the interdisciplinary team and should be given the same weight as a treating physician.[4] Defendant argues the ALJ's opinion is free from error as the physical therapist was not an acceptable medical source entitled to controlling weight. (Doc. 18 at 12-13).

An ALJ may reject the opinion of a treating physician in favor of a non-treating physician only "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence," stating an interpretation of the evidence, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In this process, an ALJ "may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 at 1041 (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).

However, only "acceptable medical sources" can "establish the existence of a medically determinable impairment." Social Security Ruling ("SSR") 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (citing 20 C.F.R. § 404.1513(a)). Physical therapists, like Ms. Deering, are not "acceptable medical sources," but instead are only "other sources" of information, a category of information that also includes, *inter alia,* spouses, siblings,

---

[4] At the conclusion of the hearing, Plaintiff's counsel presented the same argument to the ALJ. (R. 93).

- 7 -

and friends. *Id* . Although these "other sources" can show the severity of a claimant's symptoms, they cannot establish a medically determinable impairment. *Id.*

The ALJ reasonably evaluated the substantial evidence in the record in determining Plaintiff had the RFC to perform sedentary work with occasional fingering. (R. 51, 574-75). In so finding, the ALJ gave little weight to the opinion of Dr. Tadlock, who in April 2007 completed Plaintiff's state disability claim. (R. 53, 448). The ALJ explained that Dr. Tadlock diagnosed multiple impairments with seemingly very little objective evidence. (R. 53). For example, Dr. Tadlock noted Plaintiff was unable to work due to occipital neuralgia[5] and brachial neuritis,[6] which Dr. Tadlock thought was confirmed by MRI and EMG/NCV evidence. But the ALJ explained the EMG evidence showed only mild carpal tunnel syndrome of the left hand and only residual axonal loss of the right. (R. 53, 448-50, 570-77). The ALJ noted how in January 2007, Dr. Tadlock diagnosed cervical radiculopathy with disc protrusion at the C5 area as well as cervical degenerative disc disease while there were no x-rays or MRIs to support those findings. (R. 53, 521). Moreover, in March 2007 Dr. Tadlock diagnosed severe degenerative disc disease without examining Plaintiff's range of motion, evidence of muscle spasms, or x-rays. (R. 53, 511). Given this lack of objective evidence, the ALJ reasoned that Dr. Tadlock appeared to rely heavily on Plaintiff's subjective complaints.

Further, the ALJ addressed the many reasons for giving physical therapist Ms. Deering's May 2007 opinion little weight.[7] (R. 53-54, 271). For example, the ALJ noted

---

[5] Occipital neuralgia refers to pain in the back of the head or neck. Stedman's, at 1206, 1250, 1764.

[6] Brachial neuritis refers to a neurological disorder, of unknown cause, characterized by the sudden onset of severe pain. Stedman's, at 66, 1207.

[7] Citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996), Plaintiff contends the physical therapist should be given the same weight as a treating physician because the therapist became a part of "the interdisciplinary team" by working under the direction of Dr. Tadlock. (Doc. 12 at 6). In *Gomez,* a nurse practitioner's opinion was considered to be a part of a physician's opinion where she worked closely under the supervision of the physician, consulted with the physician numerous times, and was

- 8 -

MRIs and x-rays did not show limited range of motion and that treating physicians, Dr. Ronald Bennett in June 2008 and Dr. Nimfa Aguila in February 2010, found Plaintiff did not need carpal tunnel surgery. (R. 419-21, 746-48). The ALJ did not err in giving little weight to the opinions of Dr. Tadlock and Ms. Deering.

### 3. Improperly rejecting Plaintiff's credibility

Plaintiff argues next that the ALJ erred in "essentially" rejecting the credibility of Plaintiff regarding her moderately severe pain without any articulated reasons. (Doc. 12 at 8; R. 94).

In conducting the two-step process required when evaluating subjective pain testimony, the ALJ found that although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" her statements "concerning the intensity, persistence, and limiting effects of these symptoms" were not credible. (R. at 24). *See Lingenfelter v. Astrue,* 504 F.3d 1028, 1035–36 (9th Cir. 2007).

If the medically determinable impairments could reasonably be expected to cause the alleged symptoms "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Lingenfelter,* 504 F.3d at 1036. "The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek

---

acting as an agent of the physician. 74 F.3d 967, 971 (9th Cir. 1996). Despite concluding, that Ms. Deering's opinions should be given the weight of a physician under *Gomez,* Plaintiff makes no attempt to argue the basis for this conclusion other than Dr. Tadlock referred Plaintiff for an RFC assessment. Plaintiff points to no facts in the record which support findings that, during her treatment of Plaintiff, Nurse Deering worked under the supervision of a physician or consulted with a physician. Plaintiff points to no record where Dr. Tadlock refers to Nurse Deering's report. Therefore, the Court declines to conclude that the ALJ erred by not affording treating physician weight to Nurse Deering's opinion.

- 9 -

treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities." *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ adequately "identif[ied] what testimony [wa]s not credible and what evidence undermine[d] the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995). The ALJ provided clear and convincing reasons for finding the substantial evidence in the record did not support Plaintiff's subjective complaints regarding pain and for finding Plaintiff's pain adequately accounted for with her RFC limits. (R. 52-53). At her hearing, Plaintiff testified her pain on an average day was moderately severe. (R. 78). However, the record shows Plaintiff did not always take her prescribed pain medication. (R. 53, 416-18). Further, Dr. Tadlock noted on many occasions that Plaintiff responded well to various pain medications. (R. 472, 475, 499, 503, 801, 829, 833, 836, 846, 849, 852).

Regarding Plaintiff's allegations of very limited functional limitations, the ALJ discussed Plaintiff's daily activities, noting that she took care of herself during the day, including driving, cooking and eating. The ALJ stated in February 2007 she could button her shirts and comb her hair; in March 2007, she did six loads of laundry; in December 2009, she could walk without difficulty; and in January 2010, although she had back and joint pain, she had no restriction of motion. (R. 53, 308, 571, 737). The ALJ noted while Plaintiff reported difficulty concentrating, she could read novels and watch television. (R. 53). In addition, Plaintiff had no problems with any side effects of her medication in November 2010. (R. 764).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either

outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

### 4. **Failing to properly consider a Social Security Ruling**

Plaintiff argues cursorily that the ALJ erred in not considering Social Security Ruling 96-9p, which states any significant manipulative limitation of one's ability to hand and work with small objects with both hands significantly erodes the capacity for sedentary work. (Doc. 12 at 7). Defendant asserts SSR 96-9p goes on to state that the ALJ can call an expert and must weigh the expert's testimony with other evidence. (Doc. 18 at 21).

In this case, in answering the ALJ's third hypothetical question,[8] the VE testified that the sedentary jobs of security guard and telemarketing representative could be performed with occasional fingering. (R. 86-90). *See Magallanes v. Bowen,* 881 F.2d 747, 756 (9th Cir.1989) (finding a vocational expert's response to a hypothetical question constitutes substantial evidence only if the question accurately portrays the claimant's individual physical and mental impairments). The ALJ's hypothetical question, however, need not state limitations that are unsupported by the record. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 886 (9th Cir. 2006). The ALJ's third hypothetical question accurately portrayed Plaintiff's physical impairments and is supported by the record. The June 2008 EMG/nerve conduction study showed left carpal tunnel syndrome with mild denervation, but no sign of right carpal tunnel syndrome and no evidence of cervical radiculopathy or polyneuropathy. (R. 421). Further, Plaintiff received no more than steroid injections and was not referred for carpal tunnel surgery after 2006. As discussed

---

[8] The ALJ's third hypothetical proposed the following:

> "let's assume an individual has the same age, education and prior work experience, the same vocational profile as [Plaintiff] . . . . if you had the sedentary capacity and you had the manipulative limitations . . . for fingering occasionally . . . [a]nd the environmental limitations [of not working with concentrated exposure to either vibrations or hazards such as unprotected heights or dangerous machinery] . . . . Would there be jobs you could identify for this hypothetical person?"

- 11 -

above, substantial evidence in the record and the VE's testimony support the ALJ's finding that Plaintiff was not disabled.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment and **TERMINATE** this matter.

Dated this 13th day of March, 2013.

/G. Murray Snow
United States District Judge